JERRY MURRELL et al., Appellees, v. R. A. BENT-
LEY et al., Appellants.—286 S. W. (2d) 359.

Western Division at Jackson.  August 23, 1954.

Petition for Certiorari denied by Supreme Court, November 16, 1954.

564

W. C. Rodgers, of Memphis, for defendants-appellants.

Hanover & Hanover, of Memphis, for complainants-appellees.

CARNEY, J. This is a suit between members of the Klondyke Church of Christ, of Memphis, Tennessee, over the control and management of the affairs of said Church.

The Klondyke Church of Christ was established in 1936, and the defendant, R. A. Bentley, was a member of said Church at its beginning. In 1937 he was ordained an Elder in said Church by an Evangelist, a Bro. Dodd, who was white as distinguished from the parties to this suit and the members of the Klondyke Church of Christ, who are all colored.

Along with the defendant, Bentley, the defendant, Madison Green, and two other members, Garland and

Doyle, were ordained Elders at the same time. Garland and Doyle are both dead.

The defendant, Will Wright, joined the Church in 1944. The defendant, Scales Gilkey, joined the Church in 1945. He was elected as Treasurer of the Church at a business meeting sometime prior to 1951. He acted in this capacity until November 5, 1951, when he turned over the books and money to his successor, the complainant, Jerry Murrell. The activities of Gilkey were the source of considerable controversy in which he was charged by the complainant, Johnson, and others with being short in his funds.

A Church hearing was had and a final settlement and accounting revealed him to have paid $57.18 more than the amount of his alleged shortage. The Church accepted the report, but the complainant, Johnson, has at all times maintained that said final settlement and audit was incorrect and that Gilkey still owed some $130. Several members of the Vance Avenue Church of Christ and some forty or fifty members of the Klondyke Church of Christ were present at the business meeting and final accounting of Gilkey as Treasurer.

The defendants, Bentley and Green, performed the duty of Elders in said Church until about 1944 when dissension arose among members of the Church over the question of whether to keep or remove their then Minister, Bro. English.

Members and officials of the Union Avenue Church of Christ, of Memphis, Tennessee, the membership of which was composed of white people, were interested in the welfare and continued progress of the Klondyke Church of Christ, and intervened as peacemakers in the dissension. Upon the suggestion of officials of the Union Avenue Church of Christ, and in order to promote peace and

harmony in the Church, the defendants, R. A. Bentley and Madison Green, agreed to "take a back seat", so to speak, and to step aside for six months in the hopes that turmoil would subside.

The Minister, English, left the congregation, other Ministers came, and the defendants, Bentley and Green, continued to "take a back seat" without exercising any of the duties as Elders of the Church, and did not in any manner participate in the management and control of the affairs of the Church until about 1952 when dissension again became rife in the Church. This dissension was over a new Minister, one Bro. Shows who was supported by the present complainants, W. H. Johnson, Secretary of the Church; Jerry Murrell, Treasurer; and Aaron Bell, Leader. None of the present complainants were members of the Church at the time the dissension arose in 1944 mentioned above.

The present complainant, W. H. Johnson, joined the Church in 1947 and was chosen Secretary at a business meeting of the Church on January 4, 1951.

The complainant, Murrell, joined the Church in 1949 and was chosen Treasurer of the Church on October 21, 1951.

The complainant, Aaron Bell, joined the Church in 1948 and was named a Leader on October 23, 1951.

During the year 1951 sharp differences had arisen between the defendants and the present minister, Bro. Shows. The full nature of the differences between Shows and these defendants is not clearly revealed by the evidence, but indications are that it was over the personal conduct of Bro. Shows, who, it seems, was operating a radio station as well as being Minister of the Church. The present complainants and a large number of the

congregation or membership seemed to side with Bro. Shows.

The situation became worse and resulted in sharp dissension, both in and out of the Church. The defendants, Bentley and Green, brought unlawful detainer suits against Shows for possession of the Church Minister's home. Bro. Shows, Bro. Johnson and Bro. Bradley were arrested for disturbing public worship at the instance of Bentley and Green, and Bentley and Green also filed suit against Johnson and Shows in the Chancery Court of Shelby County. In November 1952, a written agreement was entered into between the defendants, Bentley and Green, as leaders of one group, and complainants, W. H. Johnson and Bradley, as leaders of the other group, as a settlement of the misunderstanding and differences between the two groups in said Klondyke Church of Christ.

The term of this agreement were as follows: Bro. Shows to resign effective November 17, 1952, and to occupy the Minister's home rent free until February 15, 1953, and to draw his regular salary of $60 per week until February 15, 1953, but Shows agreed not to interfere with any of the affairs of the Church. Likewise, it was agreed that the unlawful detainer suit should be dismissed at the cost of the defendants, Shows, et al., and recommendations were to be made for withdrawal of the criminal charges against Shows, Johnson and Bradley at their cost, and the Chancery suit was to be dismissed at the cost of Bros. Johnson and Shows.

Shows did resign, the suits were dismissed, but the costs and attorneys' fees were paid by the complainants out of funds collected by them from members of the Church and not at their own personal expense.

The feeling between the acting officials of the Church,

to-wit: complainants, Johnson, Murrell, and Bell, and the defendants, Bentley, Green, Garrett, Gilkey and Fatheree, did not seem to improve, even though Shows had gone. Sometime about June 1953 the defendants, Bentley and Green, decided that since they were Elders of the Church and as such entitled to full control of the management of the affairs of the Church, and feeling that the affairs of the Church were being mismanaged, that they would take over and oust the complainants, and as a first step thereto, on June 24, 1953, filed a suit of replevin of the Minute Book of the Church from the complainant, Johnson. This replevin suit was still pending at the time of the filing of this suit, and the defendants, Bentley and Green, had possession of the Minute Book under their replevin writ.

On July 20, 1953, the defendants, Bentley and Green, had the complainants, Johnson and Bell, arrested on charges of disturbing public worship and bound over to Circuit Court after a recent argument in Church. Also, Bentley and Green have on occasions been arrested for disturbing public worship at the instance of one or more of complainants.

On August 7, 1953, the defendants, Green, Garrett, and Bentley, filed forms with the First National Bank, of Memphis, the Church depository, asserting themselves as Trustees, thus preventing the complainant, Murrell, as Treasurer, from withdrawing any of the Church funds from the bank, which at the time of the trial amounted to some $700.

On August 16, 1953, in Church, the defendants, Bentley and Green, publicly announced that, since they were the Elders and the only Elders in the Church, they as such Elders had full control of the affairs and the management of the Church and had stood by and seen the Church

mismanaged as long as they could and that they were going to exercise their authority and take over the management of the Church, and that, therefore, the complainants, Johnson, Murrell, and Bell, would have no further authority in the management of the said Church.

On August 19, 1953, the complainants filed the present suit in the Chancery Court of Shelby County against the defendants seeking a permanent injunction against them from interfering with them in the management of the affairs of said Church.

The Church real estate was conveyed by warranty deed of Annie Dilatush dated April 3, 1939, to W. C. Wilburn, J. B. Nolen, P. W. Jones, Jr., and Madison Green, Trustees for the Klondyke Church of Christ, and the habendum clause of said deed was as follows:

"To have and to hold said real estate for the use of the Klondyke Church of Christ of Memphis, Tennessee, for the worship of God according to the New Testament Scriptures as is practiced by said Church, against all human innovations such as the addition of instrumental music, modern missionary societies, or any human religious denominations or organizations whatsoever; and against all such as would add to or take from the New Testament plan of worshipping in any manner whatsoever; and should strife or diversion ever arise in said Church over the above-named departures, or any other departures, from the New Testament order of work and worship, the real estate hereby conveyed, together with all appurtenances and hereditaments thereto belonging, or in anywise appertaining, shall be held for the use of said church those, one or more, who shall hold to and maintain the original practice of the Church."

The theory of complainants' bill was that the action of the defendants in interfering with the management of said Church and the blocking of the bank account constituted a violation of property and civil rights and a departure from the accepted practices of the Church of Christ, and a violation of the terms and provisions of said deed.

The defendants demurred to the bill, which was overruled by the Court, and on Sunday, September 20, 1953, the complainant, Johnson, at the Church hour was relating to the Church congregation the favorable action which the Chancellor had indicated toward their side of the law suit. During the course of this announcement the defendant, Will Wright, in a fit of anger, struck the complainant, Johnson, a very severe blow about the head with his fist and knocked him out and started dragging him out of the Church when other members of the Church intervened and stopped the altercation. The defendant, Wright, paid a fine of $35 for assault and battery.

On September 24, 1953, the complainants filed an amended and original bill in the form of a supplemental bill referring particularly to the action of the defendant, Will Wright, in striking the complainant, Johnson, and making the said Wright a party defendant, and seeking the same injunctive relief against him as against the others.

After the demurrers were overruled, all defendants filed answers. The gist of their defenses were:

1. The matter was entirely an ecclesiastical matter and the Court was without jurisdiction.

2. That the defendants, Bentley and Green, were Elders in the Church and, as such, had authority over the Minister, the Deacons, and any other mem-

bers of the Church in the management and control of all the affairs of the Church, and, that, therefore, they were justified in taking control of and taking over such management.

It appears by the testimony of the expert witnesses, two Ministers of the Church of Christ, that the Church of Christ does not have any written Discipline; it has no Constitution or By-Laws; No Rules or Regulations for the conduct and management of Church affairs, but that the order of worship and management of all Church affairs are conducted solely according to the instructions contained in the New Testament. There are no annual or periodic election of officials in the Church of Christ as is customary in so many of the Protestant Churches. Actually, the officials are chosen or selected rather than elected.

It is admitted by all the parties and the expert witnesses that each Church of Christ is a separate unit and is not governed or regulated by any other Church, organization, or institution. It is also admitted that the duly ordained Elders in any Church of Christ are the highest officials of said Church and as such are entitled to exercise full and complete control over the management and operation of said Church affairs, and that they select and appoint such subordinate officials, Deacons, etc., as they deem necessary and proper. The authority of the Elder is superior to that of the Minister and any of the members of the congregation.

It seems that the Elders are selected on the basis of their experience, their piety, their conformity to the practice and teachings of the Church of Christ, their willingness to labor in the Church, and after being selected by an Evangel of the Church of Christ, their names are submitted on several successive meetings of

the Church and members are invited to make known objections to their being ordained as Elders. If no objections are made after several meetings, the Elders are duly ordained and begin exercising their authority and duties as such Elder. They hold office for life and during good behavior.

Witnesses refer primarily to 1 Timothy, 3rd Chapter; 1 Peter, 5th Chapter; and Titus 1 of the New Testament as bearing directly upon the qualifications and duties of Elders of the Church.

The expert witness, Bro. F. O. Howard, testified that he was a Minister of the Church of Christ for many years, and that where there are no members competent to be Elders, that the Church must select its own subordinate officials, such as Secretary, Treasurer and Leaders, to carry on the work until such time as some members can qualify for and be ordained as Elders. He further testified that he appealed to the defendant, Bentley, to desist from his plan to take over and, in substance, to try to work in harmony with the complainant, Johnson, to no avail.

Brother Lewis Rutledge, who was a member of the Vance Avenue Church of Christ for twenty years, and who had been Minister of the Klondyke Church of Christ on two separate occasions, one for eighteen months and one for ten months, having followed Bro. English sometime after 1944, testified as a witness for the defendants. He testified that at the time he was Pastor he knew and understood the defendants, Bentley and Green, to be Elders in the Church. He further testified that he was present at the Church meeting on the final accounting and settlement of Gilkey; that Gilkey did account for all funds coming into his hands, and that complainant, Johnson, wrote up the minutes to said effect and agreed

to read the minutes at the next meeting absolving Gilkey of all shortage, but that before the next meeting Johnson called and said that the figures were wrong and that he would not read such minutes which showed him (Johnson) wrong, and the minutes were never read. Bro. Rutledge further testified that he importuned Johnson to read these minutes, but that Johnson and the other complainants were most uncooperative.

The complainant, Johnson, admitted, when shown the minute book, that he had written the minutes on the Gilkey matter absolving Gilkey of any shortage, but stated that he was directed to do so by Bro. H. A. Cholston, Pastor of the Vance Avenue Church of Christ, who intervened and who was also a witness for the defendants. Johnson further stated that when he got home and recomputed the figures he was still convinced that Gilkey was short some $130 and he refused to read these minutes and attempted to obliterate these minutes by pen and ink. Upon the trial, it seems that the counsel for defendants were able to decipher the words beneath the ink, and Johnson admitted substantially the contents thereof.

H. A. Cholston, Pastor of the Vance Avenue Church of Christ, with a membership of 800 members, testified that he had tried to assist in settling the dispute and was present on November 5, 1952, for the final hearing of the alleged shortage of Gilkey, and he testified that Johnson was very uncooperative and that he importuned Johnson to step aside in the interest of harmony and to let someone else take his place who would be acceptable to both sides, but the complainant, Johnson, refused to entertain any such idea.

The record seems to indicate that a majority of the Church membership is in favor of the complainants,

Johnson, Murrell, and Bell, in the present controversy. However, it is significant to note that no member of the Klondyke Church of Christ other than the complainants themselves testified as witnesses for the complainants.

Likewise, no members of the Klondyke Church of Christ, other than the defendants, Madison Green, R. A. Bentley, Will Wright, Scales Gilkey, and Ed Fatheree, testified for the defense.

Lee Bell, a member of the Vance Avenue Church of Christ, testified that he was present on October 8, 1953, when Bros. Doyle, Green, Bentley, and Garland, were ordained as Elders by Bro. Dodd, an Evangelist.

At the conclusion of the proof each party offered proposed issues of fact to be submitted to the jury.

The Trial Court submitted to the jury only one issue of fact: ''Are the defendants guilty of violating the provisions of the deed recorded in Book 1422, p. 225, in the Register's office of Shelby County, Tennessee, contained in the following words:

'' 'To have and to hold said real estate for the use of the Klondyke Church of Christ of Memphis, Tennessee, for the worship of God according to the New Testament Scriptures as is practiced by said Church, against all human innovations such as the addition of instrumental music, modern missionary societies, or any human religious denominations or organizations whatsoever; and against all such as would add to or take from the New Testament plan of worshipping in any manner whatsoever; and should strife or diversion ever arise in said Church over the above-named departures, or any other departures, from the New Testament order of work and worship, the real estate hereby conveyed, together with all appurtenances and hereditaments thereto belong-

ing, or in anywise appertaining, shall be held for the use of said church those, one or more, who shall hold to and maintain the original practice of the Church.' ? "

The jury responded "Yes" to the question.

The verdict of the jury was approved, motion for a new trial was overruled, and the Court issued a permanent injunction again'st said defendants enjoining them from interfering in any manner with the complainants in the management of. said Church or the withdrawal of said Church funds from the bank.

Defendants have appealed and assigned a number of errors.

Assignment of Error #5 is as follows:

"'The Lower Court erred in not setting aside the verdict of the jury and either granting appellants a new trial or dismissing appellees' bill, upon the Motion for a New Trial on the grounds that 'there is no evidence to support the verdict of the jury.' "

The learned Chancellor entered judgment for the injunction upon the finding of the jury that the defendants were guilty of violating the provisions of the deed above referred to. We must respectfully disagree with the learned Chancellor and agree with the insistence of counsel for appellants that there is no evidence to support the finding of the jury that the defendants were guilty of violating any of the provisions of said deed.

We do not find any doctrinal disputes between the two groups. The differences and strife simply arose out of a disagreement between these two groups as to which group would actually perform and carry out the New Testament order of work and worship of the Church, as provided for in the deed to the Church property, in

which both groups professed to believe. We do not think that such differences or division between members as in the case at bar are covered by the limitations in the above deed, but that such differences are personal and not doctrinal and that, therefore, there is no evidence to support the verdict of the jury on the one issue submitted to them.

■ Of course, the general rule is reiterated many times in our cases that matters of dispute concerning the internal affairs and management of a religious organization are not subject to review by the civil courts. Mason v. Winstead, 196 Tenn. 268, 265 S. W. (2d) 561; Nance v. Busby, 91 Tenn. 303, 18 S. W. 874, 15 L. R. A. 801.

■ However, under the authority of Cannon v. Hickman, 4 Tenn. App. 588, we hold that the Chancery Court had jurisdiction to determine which of these two groups was entitled to manage the affairs of the Church because as a result of their disputes the Church had obviously reached an impasse. The bank account was tied up and each side seemed determined not to yield or to submit to further negotiations on the controversy. See also Lewis v. Partee, Tenn. Ch. App., 62 S. W. 328, 333, from which we quote as follows:

"It is unquestionably true that the courts have no ecclesiastic jurisdiction, and do not pass upon questions of faith, religion, or conscience; nor will they in fact undertake to revise or to inquire into the propriety or justice of the action of a church upon any matter not affecting a property or civil right. But in order that the members of a church may enjoy their property rights, and the right to worship in their property undisturbed, as a church or as a membership of the church, the courts will inquire and de-

cide as to what parties certain church property belongs to or is rightfully in possession of; and they will inquire into the fact whether a certain person has been elected pastor or is pastor, or whether certain persons are deacons or trustees, or whether certain persons have been excommunicated from the church or are still members of the church, in order to protect the church and its membership in the enjoyment of their property rights, and their civil liberty to worship undisturbed by threats and violence, or from trespasses by those who are not officers and members of the church.''

It appears to us that the determinative issue of fact for decision by the lower Court was whether or not the defendants were Elders in the Church at the time of the filing of complainants' bill in August 1953. It is admitted by both sides that the Elders in any Church of Christ have full charge of the management and control of the Church and have jurisdiction even superior to that of the Minister, and have authority to select members to perform the duties of Secretary, Treasurer, and like subordinate and ministerial duties. Likewise, it seems to be admitted that where there are no Elders in the Church; then the Church must of necessity select from its membership persons to carry on these same duties of Secretary, Treasurer, etc.

If defendants, Green and Bentley, were Elders in July and August 1953, then, under the law of the Church of Christ, they were entitled to select persons to perform the duties of Secretary and Treasurer and other subordinate functions incident to the work and worship of the Church.

If, on the other hand, they were not Elders in July and August 1953, as contended by complainants, then

578

they had no authority or right to interfere with the complainants who had been performing the duties of Secretary, Treasurer, and Church Leader, respectively, for several months, by selection or election by the membership, and they had no right to tie up the bank account and block the activities of the Church. They should be enjoined from so doing if the Church membership were not able to settle such disputes without recourse to the civil courts.

This issue was not submitted to the jury and, under our practice, is to be treated as an issue reserved by the Chancellor.

On appeal this issue is to be considered de novo as any other question arising on an appeal in equity. Gibson's Suits in Chancery, 4th Edit., Sect. 549(e); Standard Life Ins. Co. of the South v. Strong, 19 Tenn. App. 404, 89 S. W. (2d) 367; Carpenter v. Wright, 158 Tenn. 289, 298, 13 S. W. (2d) 511.

From our review of the evidence, we are of the opinion that the great preponderance of the evidence is in favor of the defendants' contention and testimony that the defendants, Green and Bentley, were properly ordained as Elders in the Klondyke Church of Christ in 1937 and were active as such Elders until 1944; that they did not resign as Elders but simply stepped aside from 1944 to 1953 in the interest of harmony; that in 1953, under the law of the Church of Christ, they were still Elders in the Klondyke Church of Christ and as such had authority to select persons to perform the duties of Secretary and Treasurer and the other subordinate functions incident to the work and worship of the Church. Their authority was paramount to that of the complainants, and upon the exercise by said Elders of

such authority the right of the complainants to perform said functions was ended.

Therefore, Assignment of Error #5 is sustained, and judgment will be entered reversing the judgment of the lower Court and dismissing complainants' bill.

In view of the action taken above we do not deem it necessary to discuss the other assignments of error.

The appellees are taxed with the costs of this appeal.

Avery, P. J. (W.S.), and Hickerson, J., concur.