358

ARTHUR J. GEMIGNANI, Adm'r of the Estate of Kittie Williamson, Appellant, v. ED PARTEE and wife, MARVELLA PARTEE, Appellees.—302 S. W. (2d) 821.

Western Section.   April 25, 1956.

Petition for Certiorari denied by Supreme Court September 3, 1956.

Thomas F. Turley, Jr., Memphis, for appellant.

A. G. Burkhart, Jr., Burkhart & Busby and Blount & Weiss, Memphis, for appellees.

CARNEY, J.   The complainant below, Arthur J. Gemignani, Administrator of Mrs. Kittie Williamson, deceased, appeals from a decree of the Chancery Court dismissing his nulla bona bill in which he sought to reach several parcels of land and places of business as the property of the defendant Ed Partee and which property was claimed by Marvella Partee, wife of Ed Partee.

The deceased Mrs. Kittie Williamson on January 30, 1950, had been awarded a judgment for $3,000 against the defendant Ed Partee in the Circuit Court of Shelby County, Tennessee, for the death of her husband.

The $3,000 judgment was awarded as a result of an automobile collision which occurred in eastern Arkansas on June 8, 1949, when a truck owned by the defendant, Ed Partee, and carrying cotton choppers was involved in a collision.   A number of persons were injured in this collision and the husband of Mrs. Williamson was killed.

Execution was issued on the judgment and returned "nulla bona" by the sheriff of Shelby County in March, 1950.

On October 8, 1953, the complainant Administrator of Mrs. Williamson filed his bill in the present cause against the defendant Ed Partee and wife, Marvella Partee, and a number of other persons were made parties defendant. Those parties in addition to Partee and wife were persons who held deeds of trust against some of the property involved in the litigation or who had assisted the defendants Partee and wife in procuring loans or who were former owners of some of the property sought to be subjected.

The bill alleged that since June 8, 1949, the date of the collision in Arkansas, the defendant Ed Partee had followed a fraudulent scheme whereby he had rendered himself ''execution proof'' and yet continued to enjoy the benefits of owning property and operating several businesses in and around Memphis.

The bill further alleged that a number of the defendants had collaborated and cooperated with the defendant Ed Partee in helping him keep himself ''execution proof'' and that such practices included the placing of deeds of trust on some of the property. The bill also alleged in substance that while the defendant Marvella Partee claimed to own the property hereinafter referred to yet in truth the defendant Ed Partee was the true and real owner and that said property should be subjected to the payment of complainant's judgment, no part of which had been paid at the time of the trial.

The bill also sought discoveries from all of the defendants concerning their financial associations with the defendants Ed Partee and wife, Marvella Partee. The defendant Ed Partee filed an answer insisting that he was insolvent and execution proof and that all the property

involved in the litigation actually belonged to his wife, the defendant Marvella Partee.

The wife, Marvella Partee, answering through the same solicitor as her husband, said in substance that her husband had been sick and unable to work since 1947 and that she had been the sole support and money-maker in the family since that time. She denied any attempt to defraud or defeat the claims of the complainant or any other creditor but insisted that she was both the legal and equitable owner of the properties sought to be subjected to the judgment against Ed Partee.

The complainant sought a trial before the Chancellor upon oral testimony on the ground that funds were not available to properly prepare the case by deposition. The Chancellor overruled this motion. Thereupon, the complainant demanded a jury and the trial was heard upon oral testimony before a jury in Chancery Court.

The defendant Ed Partee did not testify but the defendant wife, Marvella Partee, did testify along with a number of other witnesses.

The issues of fact were submitted to the jury by the Chancellor as follows:

"Now, gentlemen, the issues of fact to be submitted to you for answer are:

"Issue of fact number 1: 'After June 8, 1949, did the defendant, Ed Partee, directly or through the instrumentality of other persons, transfer or convey, without adequate consideration, any assets or properties owned by him?'

"You can answer that yes or no. If your answer to issue of fact number 1 is "no", then that terminates the case, and in that event you need not answer the other issues.

"Issue of fact number 2: 'Is the defendant, Ed Partee, the owner of the restaurant and beer parlor known as "Thomas Street Grill", located at 1407 Thomas Street, Memphis, Tennessee?'

"You can answer that issue yes or no.

"Issue of fact number 3: 'Is the defendant, Ed Partee, the owner of the grocery known as the "Person Avenue Market", located at 115-117 West Person Avenue, Memphis, Tennessee?'

"That issue can be answered yes or no.

"Number 4: 'Is the defendant, Ed Partee, the owner of the restaurant and beer parlor known as the "Mount Zion Cafe", located at 100 Keel Avenue, Memphis, Tennessee?'

"That issue will be answered yes or no.

"5: 'Is the defendant, Ed Partee, the owner of the real estate known as the "Person Avenue Property", which was deeded to Marvella Partee by warranty deed filed for record on June 16, 1949?'

"Those issues will be answered "yes" or "no", and the issues which I have read to you are the issues which will be submitted to you for consideration."

The jurors answered the first question "no" and as instructed by the Chancellor they made no further answers to the other questions.

Thereupon, the Chancellor dismissed complainant's bill with reference to the four parcels of property mentioned above. He sustained the bill against an estate by the entirety of the defendant Ed Partee in a house and lot referred to as the "Hamilton Street Property" which was shown to be heavily encumbered by deeds of trust.

The Chancellor ordered the interest of the defendant Ed Partee in the "Hamilton Street Property" sold and the proceeds paid into the Registry of the Chancery Court. The Chancellor reserved a ruling as to whether or not the defendant Ed Partee was entitled to any exemptions in the proceeds from the sale of said interest.

On June 23, 1955, after the jury verdict the Chancellor made the following additional findings of fact:

"In this cause the solicitors for the complainant and the defendant, Marvella Partee, have each requested the Court to make findings of fact submitted to the Court in this cause by each of them.

"The Court has previously advised the solicitors for both parties that it would find such facts as the Court feels justified by the proof and which are submitted, without being argumentative, in succinct, definite and concise form.

"From the proposed findings of fact submitted by the complainant, the Court makes the following findings of fact:

"On June 8, 1949, a truck belonging to defendant Ed Partee, licensed in his name and being driven at the time about his business by his agent, was involved in a highway collision in Eastern Arkansas in which several persons were injured and in which the husband of plaintiff's intestate was killed.

"At the time of the highway collision, and for some time prior thereto, the State, County and City beer applications, beer bonds, beer business and privilege licenses on the 'Thomas Street Grill' and the 'Person Avenue Market' were in the name of Ed Partee.

"Later, Ed Partee transferred the State and County privilege license on the 'Person Avenue Market' to Vashon Hardy, on the State and County Transfer License Book.

"About the time he transferred the 'Person Avenue Market' to Vashon Hardy, Ed Partee posted a beer bond and filed application for City, State and County beer and restaurant licenses in his name for the 'Mount Zion Cafe', which transfer was made, according to the license records, from Erma Shaw, the prior licensee, to Ed Partee.

"Erma Shaw, the prior licensee, and her husband signed Ed Partee's application for city beer license on the 'Mount Zion Cafe'.

"None of the beer applications, bonds, privilege licenses, et cetera on the 'Person Avenue Market', 'Thomas Street Grill', or 'Mount Zion Cafe' were ever in the name of Marvella Partee, wife of the judgment debtor, Ed Partee.

"Except for a brief interval in 1949-50, when the licenses, et cetera, on the 'Thomas Street Grill' were in the name of John Green, the beer applications, beer bonds, licenses on all these businesses have been in the name of Ed Partee.

"Shortly after the highway collision of June 8, 1949, at least four lawsuits claiming damages totaling $86,000.00 were filed against defendant Ed Partee in the Circuit Court of Shelby County, Tennessee. No judgment in any of the four cases filed in Circuit Court has been paid—not even the court costs.

"From the proposed findings of fact submitted by the defendant, the Court makes the following findings of fact:

"The defendant, Ed Partee, is indebted to the complainant in the amount of Three Thousand ($3,000.00) Dollars as the result of a highway collision in Eastern Arkansas on June 8, 1949.

"On June 8, 1949, Ed Partee and wife, Marvella Partee, another defendant in this lawsuit, held as tenants by the entirety a house and lot known as 'Hamilton Street Property', which they had so held since 1939.

"On June 8, 1949, the defendant, Ed Partee, was in extremely poor physical condition and had not been able to work since sometime in 1947, and since 1947 the defendant Marvella Partee had supported the Partee family including Ed Partee and eight children.

"On June 8, 1949, the 'Thomas Street Grill' was owned and operated by the defendant, Marvella

Partee. The beer licenses and privilege licenses were in the name of Ed Partee. The public records reflect that Marvella Partee sold this restaurant as sole owner by recorded Conditional Sales Contract in 1949. The money remaining in said business and taken over by Marvella Partee in 1947 and 1948 was her own money.

"The business was at this time in a bankrupt condition and the main asset of said business of any value was the ability of defendant, Marvella Partee, to work therein and produce income from her labors. The assets of 'Thomas Street Grill' at the present time are very small and the only main asset of said business at this time is the ability of said Marvella Partee to operate said business for a profit. The beer licenses are in the name of Ed Partee and some privilege licenses are in the name of Ed Partee. Some privilege licenses and permits are in the name of Marvella Partee.

"This 23rd day of June, 1955.

"Ceylon B. Frazer
Chancellor"

The complainant below has appealed and assigned some nineteen assignments of error.

■ Since there was material evidence to support the finding of the jury on the one issue of fact answered by the jury and since the Trial Judge approved this finding of fact, such finding is conclusive upon appeal.

■ The findings of fact made by the Chancellor will be reviewed on this appeal de novo accompanied by a

presumption of correctness of the decree of the Chancellor unless the preponderance of the evidence is otherwise. Tenn. Code Annotated Section 27-303 (1932 Code Section 10622).

■ Those issues not answered by the jury and not found by the Chancellor are to be treated as issues reserved by the Chancellor and will be considered de novo on appeal. See Murrell v. Bentley, 39 Tenn. App. 563, 286 S. W. (2d) 359; Standard Life Insurance Co. v. Strong, 19 Tenn. App. 404, 89 S. W. (2d) 367.

From our review of the record those salient facts stand out:

Up until June 8, 1959, the record shows that the defendant Ed Partee was operating and doing business in a very substantial manner:

(1) On July 11, 1939, he and his wife, Marvella Partee, purchased as tenants by the entirety the Hamilton Street Property which they continued to own up until the time of the trial.

(2) On or about May 8, 1947, Ed Partee closed out his garage business and went into the restaurant business on Thomas Street in Memphis, Tennessee, operating under the trade name of "Thomas Street Grill." He applied for and received a beer permit and license which certified that he was the owner of said business.

(3) On April 22, 1948, Ed Partee and wife, Marvella, signed a contract for the purchase of real estate located at 115-117 West Person Avenue from Ernest Frazier and wife, Vernice Frazier.

(4) On April 6, 1949, Ed Partee executed a chattel mortgage as the owner of a 1946 model Chrysler four-door sedan in which said Chrysler automobile was conveyed to secure the payment of $1124.85 due in monthly installments to the Industrial Finance and Thrift Corp.

(5) Sometime prior to June 8, 1949, Ed Partee purchased a bus or truck and went into the business of procuring and/or hauling cotton choppers to the East Arkansas cotton plantations. This venture ended very disastrously with the collision mentioned hereinabove as a result of which lawsuits totalling some $86,000.00 were filed against the defendant Ed Partee. Not all of these suits were prosecuted to judgment but the record indicates that no part of any of the claims have ever been paid.

From and after June 8, 1949, the date of the unfortunate accident in East Arkansas and the date on which complainant and several others became creditors of Ed Partee, the financial transactions of Ed Partee became much more limited in scope.

There were several items or parcels of property involved in the litigation as shown in the issues of fact submitted to the jury by the Chancellor.

### Thomas Street Grill

The Thomas Street Grill was purchased by Ed Partee on or about May 8, 1947, and according to the testimony of his wife he put $1000 into the business of which $600 was her money. His wife, Marvella, testified that Ed Partee did not do well in the business and the business was practically broke when she took it over sometime prior to June 8, 1949. On October 14, 1949, Marvella

Partee as seller executed a conditional sales contract of the Thomas Street Grill to J. W. Green at a consideration of $1,000 cash and 36 monthly payments of $106 each.

Sometime about August, 1950, Marvella regained possession and control of the Thomas Street Grill by repurchase from J. W. Green and has since that time been in the active management and operation of said business exercising all the indicia of ownership except the beer and privilege licenses are still in the name of Ed Partee.

The Chancellor believed the testimony of Marvella Partee concerning her ownership of the Thomas Street Grill. We cannot say that the evidence preponderates against his finding and the action of the Chancellor in dismissing the complainant's bill with reference to this property is affirmed.

## Mount Zion Cafe

On January 18, 1951, Erma W. Shaw executed a written contract of sale to Marvella Partee of restaurant equipment at 100 Keel Avenue, Memphis, Tennessee, at a price of $500 cash and the balance of $1500 payable at $100 per month. This property is referred to in the pleadings at the Mount Zion Cafe. Here again the beer license and beer permit were applied for and obtained by Ed Partee in his name as the owner.

Mr. C. Kahn, partner and co-owner of the Tri-State Amusement Co., which is a business engaged in the furnishing of music machines, pin-ball machines, etc. for restaurants and other businesses, testified that he advanced Marvella the $500 with which to purchase the Mount Zion Cafe.

In our opinion the written contract and the testimony of Kahn preponderate in favor of Marvella's testimony and defense that the Mount Zion Cafe is her property. Therefore, we find as a fact that the Mount Zion Cafe property is not subject to the complainant's judgment against Ed Partee.

## Person Avenue Property

This property stands on a slightly different footing from the other items heretofore discussed. On June 8, 1949, the date of the collision out of which the $3,000 judgment arose, the defendant Ed Partee and wife, Marvella Partee, were in the actual possession of the real estate located at 115-117 West Person Avenue, Memphis, Tennessee.

They held possession under and by virtue of a written contract for sale of real estate dated April 22, 1948, executed by Ernest Frazier and wife as owners and sellers and Ed Partee and wife, Marvella Partee, as purchasers. This written contract provided for a payment of $300 in cash plus $900 additional in ninety days when possession would be given of the property and also the assumption of an indebtedness of $3,560.

Ernest Frazier, one of the grantors, testified that he sold the property to Ed Partee and wife and that they paid him along on the $900 but he did not get the whole $900 paid in ninety days as the contract provided. He moved out of the premises in August, 1948, and went to California for three weeks and came back to Memphis sometime about the first of September, 1948. The substance of his testimony is that they finished paying him the $900 sometime soon after he returned from California and during the year of 1948.

From about October 1, 1948, until June 8, 1949, Ed Partee and wife, Marvella, were in the possession of the Person Street Property as owners and paying off monthly payments on the assumed debt of $3,560 above referred to.

Ernest Frazier and wife had never executed a deed to Partee and wife. Ernest Frazier testified that in 1949 after Ed's wreck (Frazier does not identify the date but the date of the acknowledgment indicates that it was after the wreck) Ed Partee and wife and a white man came to Frazier and wife and asked them to sign a deed so they could put the property on record in "their name and we did."

The deed which they signed bore date April 2, 1949. However, it was acknowledged before a Notary Public by Ernest Frazier and wife on June 13, 1949, and filed for record on June 16, 1949. This deed purported to convey the Person Street Property to Marvella Partee only as grantee and no mention was made of any interest of Ed Partee in said property.

We think the preponderance of the evidence is clearly to the effect that on April 22, 1948, Ed Partee and wife, Marvella Partee, contracted to purchase the Person Street Property as tenants by the entirety.

From the testimony of Ernest Frazier we quote as follows:

"Q. And you agreed to sell this property for $1,200 cash and the assumption of a mortgage debt? A. Yes sir; that's right.

"Q. Who paid the money that was paid you on this contract? A. Ed Partee.

     *       *       *    ` *      *     *

"Cross Examination by Mr. Burkhart:

"Q. Ernest, who did you talk to; when did you first learn that Marvella and Ed were interested in buying this piece of property? A. I heard that they were going to put all of the people off of Thomas Street, and I was planning on going to California to live and I stopped there and she was there and I talked to her.

"Q. She was at the Thomas Street Cafe? A. Yes, sir.

"Q. Was Ed there? A. He wasn't there and I talked to her, and she said that I come back and catch her husband and they both come down and looked at the property.

"Q. When you went in there the first time, was Ed there when you went in? A. No, sir.

"Q. Who was doing the work out there? A. Nobody but her.

"Q. Marvella? When was the next time you saw them? A. Well, sir, I don't know just when they come and looked at the property, and I don't know how many times before we made the deal.

"Q. You don't know how many times they came and looked at it; did you ever go back out to Thomas Street Restaurant again? A. Yes, sir; I have been back out there.

"Q. When you went back out there, did you talk to Marvella? A. I talked to both of them.

"Q. Was Ed there the second time? A. Yes, sir; he was there the second time.

"Q. What did you discuss the second time? A. I was just telling them I was giving him a break in buying the place and I was looking to him for the money on it, for I was planning on going to California to live and I went and didn't live there for I liked here best.

"Q. What I am trying to find out, Ernest, is how long did it take him to pay you off, your interest in it? A. Well, I sold it to him in 1948, and I hadn't got all my money in California.

"Q. When did you go to California? A. But I got the rest of it when I came back.

"Q. Did you get any payments while you were in California? A. No, sir.

"Q. How long were you in California? A. I wasn't out there but three weeks.

"The Court: Let's identify when he came back.

"Q. Yes, sir. When did you come back? A. I went in August and came back about the first of September.

"Q. In what year was that? A. 1948.

"Q. In 1948? A. Yes, sir.

\*       \*       \*       \*       \*       \*

"Q. Wouldn't you say he is kind of lazy? (Referring to Ed Partee. Parentheses ours.) A. I wouldn't say about that. I wouldn't say that. I haven't had much dealing with him, no more than sold him the place."

In our opinion, and we so hold, that on June 8, 1949, Ed Partee and wife, Marvella Partee, were the equitable owners as tenants by the entirety of the Person Avenue Property.

Then on June 13, 1949, immediately after Ed Partee's truck had been involved in a very serious wreck and a number of lawsuits were threatened, Ed Partee and wife had a deed to the Person Avenue Property, which they had been occupying for about a year and which they had jointly purchased, made to Marvella Partee individually. This Court cannot escape the conclusion that the primary purpose of the parties in having said deed made to Marvella Partee instead of Ed Partee and wife, Marvella Partee, at the time it was made was to delay, hinder or defraud some of the creditors of Ed Partee, namely, those persons having claims arising out of the automobile collision in the collection of their debts or damages.

Under the provision of the Uniform Fraudulent Conveyance Act, Tennessee Code Annotated Section 64-301 (1932 Code Section 7832), any such conveyance is absolutely void whether there was consideration for the transaction or not. We quote said Code Section as follows:

"64-301. Conveyances in fraud of creditors or purchasers void.—Every gift, grant, conveyance of lands, tenements, hereditaments, goods, or chattels,

or of any rent, common or profit out of the same, by writing or otherwise; and every bond, suit, judgment, or execution, had or made and contrived, of malice, fraud, covin, collusion, or guile, to the intent or purpose to delay, hinder, or defraud creditors of their just and lawful actions, suits, debts, accounts, damages, penalties, forfeitures; or to defraud or to deceive those who shall purchase the same lands, tenements, or herditaments, or any rent, profit, or commodity out of them, shall be deemed and taken, only as against the person, his heirs, successors, executors, administrators, and assigns, whose debts, suits, demands, estates, or interest, by such guileful and covinous practices as aforesaid, shall or might be in any wise disturbed, hindered, delayed, or defrauded, to be clearly and utterly void; any pretense, color, feigned consideration, expressing of use, of any other matter or thing, to the contrary notwithstanding."'

We think this ruling is not in conflict with the one issue of fact as found by the jury for two reasons:

First, it does not appear that the jury ever found as a fact that on June 8, 1949, Ed Partee was the equitable owner of an estate by the entirety in said Person Avenue Property nor did the Trial Court instruct them that Ed Partee was the owner of such interest.

Second, the jury at no time rendered a verdict on an issue of fact relating to the good faith or lack of intent to delay, hinder or defraud on the part of Ed Partee and wife, Marvella Partee, in having the deed from Frazier and wife made directly to Ed Partee and wife, Marvella Partee.

It follows that a decree will be entered in this Court modifying the decree of the Chancellor so as to provide that Ed Partee is the owner of an estate by the entirety in the Person Avenue Property described in the pleadings subject to encumbrances of record at the time the bill was filed and that his interest in said property will be subjected to the complainant's judgment in the same manner as was the defendant Ed Partee's interest in the Hamilton Street Property.

Except as herein sustained all of the other assignments of error are overruled and the decree of the Chancellor as herein modified will be affirmed. The cause will be remanded to the Chancery Court of Shelby County for further proceedings consistent with this opinion. The defendants Marvella Partee and Ed Partee are taxed with the costs of this appeal.

Avery, P. J. (Western Section), and Bejach, J., concur.