IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
April 18, 2018 Session

## HAROLD R. GUNN v. FIRST BAPTIST CHURCH ET AL.

Appeal from the Circuit Court for Gibson County
No. H4061    William B. Acree, Senior Judge

_____

### No. W2017-02382-COA-R3-CV

_____

Appellant, a member of First Baptist Church of Humboldt, appeals the trial court's grant of summary judgment in favor of Appellees, the church, its pastor, and chairman of the deacons. Appellant challenged the vote to change the name of the church to "The Church at Sugar Creek." Finding that the ecclesiastical abstention doctrine acted as a jurisdictional bar, the trial court granted summary judgment. Discerning no error, we affirm and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is
Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

Harold Ross Gunn, *pro se*, Humboldt, Tennessee, Appellant.

John Dean Burleson, Jennifer Vallor Ivy, Jackson, Tennessee, for the Appellees, First Baptist Church (Humboldt, TN), Greg McFadden, and Gerry Brittain.

**OPINION**

## I. Background

On February 26, 2017, members of First Baptist Church of Humboldt ("the Church") voted to change the name of the Church to "The Church at Sugar Creek." Harold R. Gunn ("Appellant") is a member of the Church and was upset with the Church's vote to change its name.

On May 30, 2017, in the Circuit Court of Gibson County at Humboldt ("trial court"), Appellant filed a Complaint against the Church, its pastor, Dr. Greg McFadden, and the Chairman of the Deacons, Gerry Brittain (together with the Church and Mr. McFadden, "Appellees"). Appellant alleged that the vote to change the Church's name was illegal and, thus, void. Appellant asked the trial court to set aside the vote, to order a new vote, and to enjoin the Church from changing its name. Appellees filed a joint Answer on June 30, 2017 and an amended answer on August 31, 2017.

On August 23, 2017, Appellees filed a Motion for Summary Judgment, arguing, *inter alia*, that the ecclesiastical abstention doctrine deprived the trial court of subject matter jurisdiction over the case. On September 20, 2017, Appellant filed a response in opposition to Appellees' motion. By order of November 28, 2017, the trial court granted Appellees' Motion for Summary Judgment. The trial court held that it did not have subject matter jurisdiction over the case because the ecclesiastical abstention doctrine precluded the trial court from adjudicating any issue regarding the internal affairs and management of the Church. The trial court explained that Appellant's primary concern was whether each person who voted on the Church's name change was a member of the Church. Applying the ecclesiastical abstention doctrine, the trial court concluded that it did not have authority to determine whether each voter was a member of the Church and, thus, could not adjudicate the matter because it lacked jurisdiction. Accordingly, the trial court granted summary judgment, dismissing the case. Mr. Gunn appeals.

## II. Issues

Appellant raises four issues on appeal; however, we perceive that there is one dispositive issue:

1. Whether the ecclesiastical abstention doctrine deprived the trial court of subject matter jurisdiction to adjudicate the case.

## III. Standard of Review

This case was decided on a grant of summary judgment. A trial court's decision to grant a motion for summary judgment presents a question of law. Therefore, our review

is *de novo* with no presumption of correctness afforded to the trial court's determination. ***Bain v. Wells***, 936 S.W.2d 618, 622 (Tenn. 1997). Despite Appellant's contention that there are disputed material facts so as to preclude summary judgment, we disagree. As set out above, the sole issue before us is whether the ecclesiastical abstention doctrine denied the trial court subject matter jurisdiction to adjudicate the case. "Since a determination of whether subject matter jurisdiction exists is a question of law, our standard of review is *de novo*, without a presumption of correctness." ***Chapman v. DaVita, Inc.***, 380 S.W.3d 710, 712-13 (Tenn. 2012) (quoting ***Northland Ins. Co. v. State***, 33 S.W.3d 727, 729 (Tenn. 2000)).

## IV. Analysis

Before addressing the question of subject matter jurisdiction, we pause to discuss a procedural shortfall in Appellant's brief. Appellant's brief fails to cite any legal authority to support his contention that the ecclesiastical abstention doctrine is inapplicable. Tennessee Rule of Appellate Procedure 27(a)(7) states that an appellant's brief shall contain:

> 7) An argument, which may be preceded by a summary of argument, setting forth:
>
> (A) the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on; and
>
> (B) for each issue, a concise statement of the applicable standard of review (which may appear in the discussion of the issue or under a separate heading placed before the discussion of the issues);

Tenn. R. App. P. 27(a)(7). Furthermore, Appellant's "Table of Authorities" lists "None." In ***Newcomb v. Kohler Co.***, 222 S.W.3d 368, 401 (Tenn. Ct. App. 2006), this Court held that "[t]he failure of a party to cite to any authority or to construct an argument regarding his position on appeal constitutes waiver of that issue." (internal citation omitted). Despite Appellant's errors in briefing, this Court is required to consider whether the trial court had jurisdiction over the subject matter. Tenn. R. App. P. 13(b). This is a question of law which we review *de novo*. In the interest of full adjudication and judicial economy, we will address the substantive issue.

The ecclesiastical abstention doctrine is derived from the Religion Clauses of the First Amendment to the United States Constitution. ***Church of God in Christ, Inc. v. L. M. Haley Ministries, Inc.***, 531 S.W.3d 146, 156 (Tenn. 2017) (citing ***Hosanna-Tabor***

- 3 -

*Evangelical Lutheran Church and Sch. v. E.E.O.C.*, 565 U.S. 171, 186 (2012); *Kedroff v. Saint Nicholas Cathedral of Russian Orthodox Church in N. Am.*, 344 U.S. 94, 115-16 (1952)). Its "purpose is to prevent the civil courts from engaging in unwarranted interference with the practices, internal affairs, and management of religious organizations." *Anderson v. Watchtower Bible & Tract Soc'y of New York, Inc.*, No. M2004-01066-COA-R9-CV, 2007 WL 161035, at \*4 (Tenn. Ct. App. Jan. 19, 2007) (citing *Kedroff*, 344 U.S. at 116; *Murrell v. Bentley*, 286 S.W.2d 359, 365 (Tenn. Ct. App. 1954)). The ecclesiastical abstention doctrine "prohibits secular courts from redetermining the correctness of a decision by a religious tribunal on issues of canon law, religious doctrine, or church governance." *Anderson*, 2007 WL 161035, at \*5 (citing *Serbian Eastern Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 710 (1976)). As explained in *Anderson*:

> Because of the freedom of religion guaranteed in the Constitution, religious organizations may establish their own rules and regulations for internal discipline and government and create tribunals for adjudicating disputes over these matters. *Milivojevich*, 426 U.S. at 724. When this choice is exercised, the Constitution requires that civil courts accept such tribunals' decisions as binding. *Id.* at 709. Decisions of the highest church tribunal are binding on civil courts in "all cases of ecclesiastical cognizance." *Watson v. Jones*, 80 U.S. 679, 729. (1871). Claims that a religious tribunal or organization violated its own rules are not reviewable by courts. *Drevlow v. Lutheran Church, Missouri Synod*, 991 F.2d 468, 470-71 (8th Cir. 1993); *Travers v. Abbey*, 58 S.W. 247, 248 (Tenn. 1900) (stating that whether the proceedings were irregularly conducted was a question for church authorities, not the courts).

*Anderson*, 2007 WL 161035, at \*6.

When the ecclesiastical abstention doctrine applies, it "functions as a subject matter jurisdictional bar that precludes civil courts from adjudicating disputes that are 'strictly and purely ecclesiastical' in character and which concern 'theological controversy, church discipline, ecclesiastical government, or the conformity of the members of the church to the standard of morals required by them.'" *Church of God in Christ, Inc.*, 531 S.W.3d at 159 (citing *Watson*, 80 U.S. at 733); *see also Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 449 (Tenn. 2012) (citing *Mason v. Winstead*, 265 S.W.2d 561, 563 (Tenn. 1954) (removal of a minister); *Travers*, 58 S.W. at 247-48 (removal of a minister)); *Bentley v. Shanks*, 348 S.W.2d 900, 903 (Tenn. Ct. App. 1960) (quoting *Lewis v. Partee*, 62 S.W. 328, 333 (Tenn. Ch. App. 1901) ("[C]ourts have no ecclesiastic jurisdiction, and do not pass upon questions of faith, religion, or conscience.")). Because it is a bar to subject matter jurisdiction, the ecclesiastical abstention doctrine may be raised at any time as a basis for dismissal of the lawsuit. *Church of God in Christ, Inc.*, 531 S.W.3d at 159.

- 4 -

Although the ecclesiastical abstention doctrine precludes courts from adjudicating most questions arising from church activities, it does not apply in every legal dispute regarding religious organizations. *Id.* Courts may address claims involving religious organizations "as long as they can do so using neutral principles of law and can refrain from resolving religious disputes and from relying on religious doctrine." *Id.* (quoting *Redwing*, 363 S.W.3d at 452). In other words, if the trial court could have adjudicated the dispute "without resolving questions of religious doctrine, polity, or practice," the ecclesiastical abstention doctrine does not bar its jurisdiction. *Id.* However, if the issue involves resolution of such question(s), the ecclesiastical abstention doctrine "would function as a subject matter jurisdictional bar precluding" the trial court's resolution of this matter. *Id.*

In relevant part, Appellant's complaint alleges that non-members were allowed to vote on the Church's name change, which renders the vote illegal and void under the Church's by-laws. The Church's by-laws explain how an individual may become a member of the Church, to-wit:

> Any natural person may become a member of the corporation at any regular church service by:
>
> (a) trusting Jesus Christ as his or her personal Savior and Lord and making a public statement of this trust through the witness of believer's baptism;
>
> (b) a letter from another Southern Baptist Church stating his or her experience in Jesus Christ and church membership;
>
> (c) a personal statement which includes:
>
>> a. his or her salvation experience in Christ and
>> b. subsequent witness through believer's baptism and
>> c. the inability to provide a letter as provided in (b) above and
>> d. requesting membership and agreeing to conform to the rules and regulations as may from time to time be established by a majority vote of the members.

By its plain language, the requirements for membership are rooted in the religious doctrines and practices of the Church. Accordingly, the trial court held:

> The *gravamen* of [Appellant's] complaint is that it is not clear that people who voted were members of the church. This issue involves ecclesiastical government and is clearly within the purview of the Doctrine.

The vote on the church's name alone is sufficient to amount to "internal affairs" and "management," but this [c]ourt's primary concern is the process by which this court would have to determine whether each voter was a member of the church.

This [c]ourt does not have subject matter jurisdiction to determine whether voters were members of the church. Such an inquiry would require the court to step outside the bounds of neutral principles which would go beyond the narrow circumstances when a court has jurisdiction to hear these cases.

We agree with the trial court that the gravamen of Appellant's complaint is whether the votes on the Church's name change were cast by members. As set out above, membership requires compliance with religious doctrine and practice. As such, questions of membership are not within the purview of the trial court by operation of the ecclesiastical abstention doctrine. *See* ***Church of God in Christ, Inc.***, 531 S.W.3d at 159. Furthermore, a church's decision to change its name is a decision regarding the internal affairs and management of the church and is a decision in which civil courts are prevented from interfering. *See* ***Anderson***, 2007 WL 161035, at *4. Additionally, a claim that a church violated its own rules is not reviewable by courts. *See* ***Id.*** (citing ***Drevlow v. Lutheran Church, Missouri Synod***, 991 F.2d 468, 470-71 (8th Cir. 1993); ***Travers***, 58 S.W. at 248). For these reasons, the ecclesiastical abstention doctrine functions as a bar to the trial court's subject matter jurisdiction and the trial court did not err in granting summary judgment in favor of Appellees.

## V. Conclusion

For the foregoing reasons, we affirm the trial court's order. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed against the Appellant, Harold R. Gunn and his surety, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE