IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 11, 2009 Session

## TWO RIVERS BAPTIST CHURCH, ET AL. V. JERRY SUTTON, ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 07-2088-I     Claudia Bonnyman, Chancellor**

_____

**No. M2008-01730-COA-R3-CV - Filed May 20, 2010**

_____

Officers of a church appeal the trial court holding that under Tenn. Code Ann. § 48-66-102 the members of the church have a statutory right to church records. We find that the members have a right to the records described in subsection (a) of the statute since such access is unconditional and since enforcing this right does not entangle the court in religious affairs in violation of the ecclesiastical abstention doctrine. However, the members failed to articulate a "proper purpose" as required in Tenn. Code Ann. § 48-66-102(c) to gain access to those records described in subsection (b) of the statute. Accordingly, we affirm the trial court's judgment in part and reverse in part.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed in Part, Reversed in Part**

PATRICIA J. COTTRELL, P.J.,M.S., delivered the opinion of the court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Larry L. Crain, Abigail Southerland, Brentwood, Tennessee, for the appellants, Jerry Sutton, et al.

Mark T. Freeman, Nashville, Tennessee, for the appellees, Two Rivers Baptist Church, et al.

**OPINION**

This suit began as a dispute between members of Two Rivers Baptist Church, ("the Church"), a non-profit corporation, and its officers over governance of the Church. Initially, fifty-four members ("the Members") of the Church sued the senior pastor, Jerry Sutton, and other Church officers (collectively "Church Officers") under a variety of theories alleging that the Church Officers had not governed the Church in accordance with internal governing

documents, mishandled Church finances, and acted in bad faith. The relief sought by the Members included discovery to determine the extent of the Church Officers' alleged wrongdoing, the removal of the Church Officers, reimbursement of distributions previously made to the senior pastor, and an order requiring the Church to hold a meeting "so that certain governance issues can be addressed." In addition, the Members also sought access to Church records under the Non-Profit Corporation Act, specifically Tenn. Code Ann. §§ 48-66-102 and 104 ("Act").

The sole issue on appeal is whether the Members are entitled to access to Church records under the Act, and it is important to understand the context of the request.

The Members filed motions to compel, and in its November 2007 order addressing those motions, the trial court ordered the Church Officers to allow the Members access to various Church records under the Act. The trial court found:

> The Plaintiffs have met the requirements of Tenn. Code Ann. § 48-66-102(c).
> The Plaintiffs stated they will use the records to determine their property rights
> as members in the non-profit corporation church.

Consequently, the Church Officers were ordered to allow access to a variety of Church records which included resolutions, minutes of meetings, accounting records, and membership lists.

In response to a motion to dismiss, the trial court dismissed all of Members' claims by order February 4, 2008, except the claim pertaining to the records request under the Act. The trial court found it lacked subject matter jurisdiction over the vast majority of the Members' claims because to rule on the claims against the pastor and the other Church Officers would require the court to delve into internal governance of a religious group in violation of the ecclesiastical abstention doctrine.

Although some of the records were produced, the Members later filed a motion to compel regarding other records. On January 22, 2008, the trial court granted the Church Members' motion to compel finding that "pursuant to Tenn. Code Ann. § 48-66-101 *et seq.*, the Plaintiffs sought to inspect and copy church records in order to address their member property rights in the church building and its funds." The court adopted the Members' stated reason for seeking the records and found:

> The purpose for which the Plaintiffs are allowed access to these records, is not
> to engage in lawsuit discovery, but rather to address their general property
> rights as members of the non-profit corporation.

Finally, on May 7, 2008, the trial court entered a final order on the inspection of the Church records noting that most records had been made available to the Members, but ruling on final points of disagreement.

The Members originally appealed the trial court's decision to dismiss their numerous claims against the Church Officers, but the Members' appeal was later voluntarily dismissed. The Church Officers, on the other hand, appealed the trial court's decision that Tenn. Code Ann. § 48-66-102 required the Church Officers to produce Church records. Consequently, the only issue on appeal is whether the Church Officers were required by Tenn. Code Ann. § 48-66-102 to produce the records as ordered by the trial court. Although given an extension at the time to file a brief on the issue whether Tenn. Code Ann. § 48-22-102 required production of Church records, the Members did not file a brief or participate in oral argument on appeal.

The issue before us is the extent to which Tennessee Code Annotated § 48-66-102 grants Members access to Church records. That statute, which governs access by members to records of non-profit corporations, provides as follows:

> **48-66-102. Inspection of records by members. -** (a) Subject to § 48-66-103(c), a member is entitled to inspect and copy, at a reasonable time and location specified by the corporation, any of the records of the corporation described in § 48-66-101(e) if the member gives the corporation a written demand at least five (5) business days before the date on which the member wishes to inspect and copy.
>
> (b) A member is entitled to inspect and copy, at a reasonable time and reasonable location specified by the corporation, any of the following records of the corporation if the member meets the requirements of subsection (c) and gives the corporation written notice at least five (5) business days before the date on which the member wishes to inspect and copy:
>
> (1) Excerpts from any records required to be maintained under § 48-66-101(a), to the extent not subject to inspection under subsection (a);
>
> (2) Accounting records of the corporation; and
>
> (3) Subject to § 48-66-105, the membership list.
>
> (c) A member may inspect and copy the records identified in subsection (b) only if:
>
> (1) The member's demand is made in good faith and for a proper purpose;
>
> (2) The member describes with reasonable particularity the purpose and the records the member desires to inspect; and

(3) The records are directly connected with the purpose for which the demand is made.

(d) The right of inspection granted by this section may not be abolished or limited by a corporation's charter or bylaws.

(e) This section does not affect:

(1) The right of a member to inspect records under § 48-57-201 or, if the member is in litigation with the corporation, to the same extent as any other litigant; or

(2) The power of a court, independently of chapters 51-68 of this title, to compel the production of corporate records for examination.

Thus, under Tenn. Code Ann. § 48-66-102, a Member's right to access a record is dependent upon the type of record involved. Tenn. Code Ann. § 48-66-102(a) and (b) create two classes or types of records, with different requirements for their production. The records described in subsection (a) are available to a member without condition; but a member is entitled to access to the records described in subsection (b) only if the conditions in subsection (c) are met.

Under subsection (a), a member may have access to the records listed in another statute, Tenn. Code Ann. § 48-66-101(e), without condition.[1] The records available to members without condition are those that the corporation is required to keep at its principal office, specifically:

(1) Its charter or restated charter and all amendments to it currently in effect;

(2) Its bylaws or restated bylaws and all amendments to them currently in effect;

(3) Resolutions adopted by its board of directors relating to the characteristics, qualifications, rights, limitations and obligations of members or any class or category of members;

(4) The minutes of all meetings of members and records of all actions approved by the members for the past three (3) years;

(5) All written communications to members generally within the past three (3) years, including the financial statements furnished for the past three (3) years under § 48-66-201;

(6) A list of the names and business or home addresses of its current directors and officers; and

---

[1] This right is subject to Tenn. Code Ann. § 48-66-103(c) which allows the non-profit corporation to charge for the copies.

-4-

(7) Its most recent annual report delivered to the secretary of state under §
48-66-203.

Tenn. Code Ann. § 48-66-101(e).

On the other hand, a member's statutory right to access certain other records of the non-profit (but which are not included in subsection (a)) is governed by  subsection (b) of Tenn. Code Ann. § 48-66-102 and is explicitly conditioned upon the member's request meeting the conditions in subsection (c) of that statute.  Tenn. Code Ann. § 48-66-102(b). Those records include accounting records, membership lists, and other records set out in the statute.  The conditions of subsection (c) require, among other things, that the request be made "in good faith and for a proper purpose" and that the records must be "directly connected" with this "proper" purpose.

On appeal, the Church Officers argue the trial court erred in ordering them to produce the records described in subsection (a) of Tenn. Code Ann. § 48-66-102, by reference to Tenn. Code Ann. § 48-66-101(e), on the basis that the order violated the ecclesiastical abstention doctrine.

> The ecclesiastical abstention doctrine (sometimes called the church autonomy doctrine, *see, e.g., Bryce v. Episcopal Church in the Diocese of Colorado*, 289 F.3d 648 (10th Cir. 2002)), is rooted in the First Amendment to the United States Constitution, and its purpose is to prevent the civil courts from engaging in unwarranted interference with the practices, internal affairs, and management of religious organizations.[2]  *Kedroff v. St. Nicholas Cathedral*, 344 U.S. 94, 116 (1952);  *Murrell v. Bentley,* 286 S.W.2d 359, 365 (Tenn. Ct. App. 1954).  Civil courts cannot adjudicate disputes turning on church policy and administration or on religious doctrine and practice.  *Serbian Eastern Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 708-09 (1976); *Presbyterian Church v. Mary Elizabeth Hull Memorial Presbyterian Church,* 393 U.S. 440, 446-47 (1969);  *Kedroff v. St. Nicholas Cathedral*, 344 U.S. at 116; *Gonzalez v. Roman Catholic Archbishop*, 280 U.S. 1, 16 (1929).

---

[2] The First Amendment's free exercise guarantee and its prohibition against laws respecting the establishment of religion have been made wholly applicable to the states by the Fourteenth Amendment. *School District of Abington Township v. Schempp*, 374 U.S. 203, 215-216 (1963); *Cantwell v. Connecticut,* 310 U.S. 296, 303 (1940).  Courts have at times varied in their identification of the source of the ecclesiastical abstention doctrine as the Free Exercise Clause or the Establishment Clause, or both.  *See Rosati v. Toledo Catholic Diocese*, 233 F. Supp 2d 917, 920 (N.D. Ohio 2002)(stating that the majority hold that the doctrine is founded in the Free Exercise Clause)..

> "A consequence of this Nation's fundamental belief in the separation of church and state is that, under most circumstances, the First and Fourteenth Amendments preclude civil courts from adjudicating church fights that require extensive inquiry into matters of 'ecclesiastical cognizance.'" *Burgess v. Rock Creek Baptist Church,* 734 F.Supp. 30, 31 (D.D.C. 1990), *citing Serbian Eastern Orthodox Diocese v. Milivojevich*, 426 U.S. at 709-10. The underlying premise is that our system of government, through the First Amendment, "has secured religious liberty from the invasion of the civil authority." *Watson v. Jones,* 80 U.S. 679, 730 (13 Wall.)(1872).

*Anderson v. Watchtower Bible and Tract Society of New York, Inc.*, No. M2004-01066-COA-R9-CV, 2007 WL 161035, at *4-5 (Tenn. Ct. App. Jan. 19, 2007).[3]

It is clear that the unconditional right to access under subsection (a) does not in this case run afoul of the ecclesiastical abstention doctrine since it does not require the court to become entangled in any way with church doctrine or disputes in order to decide the question of access. Consequently, the trial court correctly ordered the Church Members to produce the records described in subsection (a) of Tenn. Code Ann. § 48-66-102.

With regard to the second class of documents under subsection (b) and (c), the Church Officers argue that constitutional principles protect these documents from access by Members and, alternatively, that the trial court erred in finding the statute required access since the conditions of subsection (c) were not met. We need not examine whether access to the membership lists violates the Church Officers' alleged associational right to privacy under the First Amendment, because application of the statute to the facts herein does not require production.

For the records under subsection (b), the Members relied upon their "property rights in the church building and its funds" as the proper purpose. The purpose presented by the Members and accepted by the trial court was to determine their property rights. However, as has been previously held, unless there is an agreement to the contrary in some bylaw or associational agreement, any decision about control of church property is to be decided by a majority vote of the church. *See Avondale Church of Christ v. Merrill Lynch*, E2007-

---

[3] The Tennessee Supreme Court similarly held long ago that courts of this State are without jurisdiction to inquire into or supervise the decisions of religious organizations. *Nance v. Busby*, 18 S.W. at 881, citing *Watson*, 80 U.S. at 727. Tennessee courts have continued to refuse to hear disputes that are perceived to be purely ecclesiastical in nature. *Travers v. Abbey*, 58 S.W. 247, 247-48 (Tenn. 1900) (holding that dispute over removal of pastor did not involve property or personal rights, related to governance of and discipline by church, and courts would not review the decisions of ecclesiastical judicatures); *Martin v. Lewis*, 688 S.W.2d 72, 73 (Tenn. Ct. App. 1985).

02335-COA-R3-CV, 2008 WL 4853085, at *5-7 (Tenn. Ct. App. Nov. 10, 2008). It has likewise been found that church members have no property rights in their contributions to a church. *Foster v. Collins*, W2004-01959-COA-R3-CV, 2005 WL 3527656, at *7 (Tenn. Ct. App. Dec. 27, 2005). Consequently, the Members have no property rights in the church building or its assets. This is in accord with the generally accepted law on the subject. Generally, a non-profit corporation, and not its members, owns the property of the non-profit. 12A FLETCHER CYC. CORP., 5707. Absent a departure by the majority from doctrine accepted by the articles of incorporation, the minority has no right to claim church property from a majority at the church membership. *Id*. *See Cumberland Presbyterian Church v. North Red Bank Cumberland Presbyterian Church*, 430 S.W.2d 879 (Tenn. Ct. App. 1968).

In effect, the purpose specified by the Members for obtaining the records in subsection (b) has no legal existence. We are cognizant that the Church Officers had the burden of proof that the Members' purpose was not proper and that a purpose is generally deemed proper if related to legitimate interests of the shareholder and is not harmful to the corporation. *See City of Franklin v. Middle Tennessee Electric Membership Corporation*, M2007-1060-COA-R3-CV, 2009 WL 2365572, at *6-8 (Tenn. Ct. App. 2009). However, as discussed above, the Members did not have a property interest in the church assets, which was the reason relied upon before the trial court. Subsection (c)(2) requires the Member to describe the purpose "with particularity." Whether access would have been required had another purpose been proffered by the Members is speculative at best.

Consequently, as it does not appear the Church Members enunciated a proper purpose for the documents as required by Tenn. Code Ann. § 48-66-102(b) and (c), the trial court erred when it required the Church Officers to produce those records.

The trial court is affirmed in part and reversed in part. Costs of this appeal are to be apportioned fifty percent to the appellants and fifty percent to the appellees.

_____
PATRICIA J. COTTRELL, P.J., M.S.